IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ACRISURE, LLC d/b/a | ) | |
| UPSTREAM BROKERS, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | C.A. No. 4:19-CV-662 |
| vs. | ) | |
| | ) | |
| EDGEWOOD PARTNERS INSURANCE | ) | |
| CENTER d/b/a/ EPIC INSURANCE | ) | |
| BROKERS AND CONSULTANTS, | ) | JURY DEMANDED |
| JOSE PALMER, and NIKKI HOWES, | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

## ACRISURE, LLC'S VERIFIED APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND COMPLAINT

Acrisure, LLC d/b/a Upstream Brokers ("Acrisure") seeks a temporary restraining order, preliminary injunction, attorneys' fees, and damages against Defendants Edgewood Partners Insurance Center ("EPIC"), Jose Palmer ("Palmer") and Nikki Howes ("Howes"). Acrisure is commencing this action against Defendants for their actual and threatened misappropriation of Acrisure's trade secrets. Acrisure anticipates that if an injunction does not issue, Defendants will misappropriate, use, or otherwise disclose confidential and trade secret information, any of which will result in immediate and irreparable harm to Acrisure.

### PARTIES

1.     Plaintiff Acrisure, LLC d/b/a Upstream Brokers is a Michigan limited liability company based in Caledonia, Michigan with offices at 2020 N. Memorial Way Houston, TX 77007.

1

2.     Defendant Edgewood Partners Insurance Center ("EPIC") is a California corporation with offices at 2700 Post Oak Boulevard, 25th Floor Houston, Texas 77056. EPIC may be served with process through its registered agent, National Registered Agents, Inc. 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

3.     Defendant Jose Palmer residing at 820 Sherwood Forest, Dickinson, TX 77539. Upon information and belief, Palmer is currently employed at EPIC's office located at 2700 Post Oak Boulevard, 25th Floor Houston, Texas 77056. Palmer may be served with process at either of the above addresses.

4.     Defendant Nikki Howes is an individual residing at 7027 Morning Sky, Katy, TX 77494. Upon information and belief, Howes is currently employed at EPIC's office located at 2700 Post Oak Boulevard, 25th Floor Houston, Texas 77056. Howes may be served with process at either of the above addresses.

## JURISDICTION AND VENUE

5.     The Court has jurisdiction over this matter based upon 28 U.S.C. § 1331, as this case involves, among other things, the application of a federal statute, the Defend Trade Secrets Act, 18 U.S.C. § 1836(c).

6.     This Court has jurisdiction over this TRO and PI proceeding to the extent it involves state law claims as a result of its supplemental jurisdiction pursuant to 28 U.S.C. § 1367; such claims on which the application for TRO and PI are premised are so closely related to the Defend Trade Secrets Act claim that they are part of the same case and controversy.

7.     This Court has jurisdiction to issue a TRO and PI because the parties expressly agreed to these proceedings in the Employment Agreement (defined below).

8.      This Court has personal jurisdiction over Defendant Palmer because he resides in, is a citizen of, and is domiciled in Dickinson, Texas, and he was employed at Acrisure's office in Houston, Texas.

9.      Based on Palmer's conduct and employment with Acrisure, it was foreseeable that Palmer would be required to appear to respond to Acrisure's claims in the United States District Court for the Southern District of Texas.

10.     This Court has personal jurisdiction over Defendant Howes because she resides in, is a citizen of, and is domiciled in Katy, Texas, and she was employed at Acrisure's office in Houston, Texas.

11.     Based on Howes conduct and employment with Acrisure, it was foreseeable that Howes would be required to appear to respond to Acrisure's claims in the United States District Court for the Southern District of Texas.

12.     This Court has personal jurisdiction over EPIC because it is a resident of Houston, Texas and based on its conduct alleged herein it was foreseeable that EPIC would be required to appear to respond to Acrisure's claims in the United States District Court for the Southern District of Texas.

13.     Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events giving rise to this claim occurred in this District.

SUMMARY OF FACTS AND ALLEGATIONS FORMING THE BASIS FOR THIS LITIGATION

A.  **Insurance Services and Competition**

14.    Acrisure is a national group of agencies offering insurance and risk management services to personal, small, and middle-market clients.  Acrisure is one of the top ten largest insurance agencies in the nation.  *See* Decl. of Camille Reiser ¶ 3, attached hereto as Exhibit A.

15.    Acrisure is based in Caledonia, Michigan, with offices in London, Bermuda, Canada and throughout the United States, nationwide.  Acrisure's U.S. locations include Acrisure, LLC d/b/a Upstream Brokers in Houston, Texas.  Acrisure purchased Upstream Brokers in September 2015.  *Id.* ¶ 4.

16.    The insurance and risk management industry is highly competitive.  *See id.* ¶ 5. In the course of conducting its business, Acrisure develops and maintains confidential information and trade secrets, which are essential to the successful operation of its business.  *Id.* This confidential information and trade secrets include Acrisure's client lists, pricing information, underwriter relationships, account pricing, renewal dates and specific coverages, which are unique to each client.  This information is a protectable interest belonging to Acrisure.  *Id.*

17.    If a competitor had Acrisure's confidential information and trade secrets, it would have an unfair competitive advantage because it could more effectively target particular clients, for particular products or services, at a better price or based on different coverage.  *Id.* ¶ 6.

18.    Consequently, Acrisure takes a variety of measures to ensure that its confidential information and trade secrets are protected from unauthorized disclosure.  *Id.* ¶ 7.  Acrisure protects its confidential information and trade secrets by password protecting its computers, network, and other databases; restricting access to certain databases or information so that only those personnel who require the information can access it; restricting access to its facilities, and

alarming those premises; requiring employees to sign employment agreements which contain confidentiality clauses; requiring that all employees return all confidential information and trade secrets upon termination of their employment; collecting the computers from departing employees; and requiring confidentiality from employees with respect to Acrisure's confidential information and trade secrets. *Id*.

19.     Acrisure's business success depends upon its ability to secure and maintain the confidence and trust of its clients through loyalty, integrity, skill, and fidelity of its employees. *Id*. ¶ 8.  The highly sensitive information provided by Acrisure to Palmer and Howes is of extraordinary value to Acrisure. *Id*.

20.     Defendant EPIC is a retail property and casualty and employee benefits insurance brokerage and consulting firm. *Id*. ¶ 9. EPIC and Acrisure are direct competitors in the marketplace.

### B. <u>Defendants Palmer and Howes' Employment with Acrisure</u>

21.     Defendant Palmer was until recently employed by Acrisure as a producer. *Id*. at ¶ 10.  He was employed with Acrisure or its predecessor company since July 1, 2011, and was a Vice President of the company. *Id*.  He was employed by Upstream Brokers when Acrisure acquired Upstream. *Id*.  Palmer was employed as a producer, salesman, and account executive. *Id*.  In that role, Palmer's primary responsibilities were selling and servicing insurance products to Acrisure's clients. *Id*.  Palmer was intimately involved in developing business relationships, quoting prices for clients, expanding the scope of products clients purchased, and advising clients on the products offered by Acrisure. *Id*.  He was also responsible for designing and presenting those products on an annual basis to Acrisure's clients. *Id*.

22.     On August 27, 2015, Palmer and Acrisure entered into an Employment Agreement ("Palmer Agreement") binding each other to the provisions therein.  A true and correct copy of the Palmer Agreement is attached hereto as Exhibit B.

23.     As part of this Agreement, Palmer agreed to not "directly or indirectly, disclose, furnish, or make available, . . .any Confidential Information [as defined in the Agreement] without [Acrisure's] prior written consent.   These restrictions concerning Confidential Information shall remain in effect following termination of this Agreement or termination of Employee's employment with the Company, without limitation."  *Id.* ¶ 8.

24.     In addition, Palmer agreed that "for the duration of Employee's employment, and in the event Employee's employment is terminated for any reason, for a period of two (2) years after the termination of employment" he would not:

>    (1) Contacting or engaging in any communication with any [Acrisure] customer for whom Employee had responsibility, or contacting or engaging in any communication with any [Acrisure] customer about whom Employee obtained knowledge during employment with [Acrisure], to secure business competitive to the products and services provided by [Acrisure];
>
>    Requesting, advising or encouraging any customer of [Acrisure] to terminate or curtail its relationship with [Acrisure], or requesting or advising any person to refrain from becoming a customer or supplier of the [Acrisure]; and
>
>    Requesting, advising or encouraging any employee, agent, representative or independent contractor of [Acrisure] to terminate his, her, or its relationship with [Acrisure], or requesting or advising any person to refrain from becoming an employee, agent, representative or independent contractor of [Acrisure], or otherwise pursuing, employing or retaining (as an employee, an independent contractor or otherwise) an employee, agent, or independent contractor of [Acrisure] without the written permission of [Acrisure].

*Id.* ¶ 10.

25.     Defendant Howes was until recently employed by Acrisure as account manager. Ex. A, ¶ 13.  She was employed with Acrisure or its predecessor since February 1, 2013, and was

a Vice President of the company.  *Id*.  In her role as account manager, Howes' primary responsibilities were sales and services of insurance products for Acrisure's clients.  *Id*.  She was intimately involved in developing business relationships, quoting prices for clients, expanding the scope of products clients purchased, and advising clients on the products offered, renewal or existing accounts and new business development.  *Id*.  Howes had specific clients, which she advised and was responsible for.  *Id*.

26.     On September 1, 2015, Howes and Acrisure entered into an Employment Agreement ("Howes Agreement") binding each other to the provisions therein.  A true and correct copy of the Howes Agreement is attached hereto as Exhibit C.

27.     As part of this Agreement, Howes agreed to not "directly or indirectly, disclose, furnish, or make available, . . . any Confidential Information [as defined in the Agreement] without [Acrisure's] prior written consent.   These restrictions concerning Confidential Information shall remain in effect following termination of this Agreement or termination of Employee's employment with the Company, without limitation."  *Id*. ¶ 8.

28.     In addition, Howes agreed that "for the duration of Employee's employment, and in the event Employee's employment is terminated for any reason, for a period of two (2) years after the termination of employment" he would not:

> (1) Contacting or engaging in any communication with any [Acrisure] customer for whom Employee had responsibility, or contacting or engaging in any communication with any [Acrisure] customer about whom Employee obtained knowledge during employment with [Acrisure], to secure business competitive to the products and services provided by [Acrisure];
>
> Requesting, advising or encouraging any customer of [Acrisure] to terminate or curtail its relationship with [Acrisure], or requesting or advising any person to refrain from becoming a customer or supplier of the [Acrisure]; and
>
> Requesting, advising or encouraging any employee, agent, representative or independent contractor of [Acrisure] to terminate his, her, or its relationship with

> [Acrisure], or requesting or advising any person to refrain from becoming an employee, agent, representative or independent contractor of [Acrisure], or otherwise pursuing, employing or retaining (as an employee, an independent contractor or otherwise) an employee, agent, or independent contractor of [Acrisure] without the written permission of [Acrisure].

*Id*. ¶ 10.

29.     In the course of their employment with Acrisure, Palmer and Howes had access to Acrisure's confidential and proprietary information including information about Acrisure's operations, processes, procedures, trade secrets, customer lists, agent lists, adjuster lists, rating techniques, rates, coverage, accounting rules, employee information, computer techniques, marketing techniques, finances, business plans, pricing, sales, the needs and demands of customers, vendor lists, and contacts with insurance companies.  *See* Ex. A, ¶ 16.

### C.  Palmer's and Howes' Resignation and Misappropriation of Acrisure's Confidential Information

30.     On February 19, 2019, Palmer and Howes resigned from Acrisure to begin working for EPIC.  Attached hereto as Exhibit D is a true and correct copy of Howes' letter of resignation from Acrisure.  Attached hereto as Exhibit E is a true and correct copy of Palmer's letter of resignation from Acrisure.

31.     On February 19, 2019, EPIC issued a press release, indicating that Howes had joined EPIC's "Energy and Marine Practice, within its Property and Casualty operations, as a Client Advocate."   According to the press release, Howes would "be responsible for new business development and the design, placement and management of property/casualty insurance programs, providing risk management strategies and solutions for mid-market and large clients." EPIC's press release highlights Howes' previous employment with Acrisure, "where she served as a Vice President with a focus on the risk exposures of marine and energy operations in the

Gulf of Mexico."  Attached hereto as Exhibit F is a true and correct copy of a February 19, 2019 press release from EPIC related to Howes' employment with EPIC.

32.     On February 19, 2019, EPIC issued a press release indicating that Palmer had joined EPIC's "Energy and Marine Practice, within its Property and Casualty operations, as a Principal."  According to the press release, Palmer would "be responsible for new business development and the design, placement and management of property/casualty insurance programs, providing risk management strategies and solutions for mid-market and large clients." EPIC's press release highlights Palmer's previous employment with Acrisure, "where he served as a Vice President for over seven years, supporting companies in the Construction and Oil/Gas sectors with complicated risks, including international and environmental exposures."  Attached hereto as Exhibit G is a true and correct copy of a February 19, 2019 press release from EPIC related to Palmer's employment with EPIC.

33.     Upon information and belief, EPIC wants to increase its business.  In light of that, after the resignations of Palmer and Howes, Acrisure reviewed their computers and emails to ensure they did not misappropriate any Acrisure confidential information or trade secrets.  *See* Ex. A, ¶ 22.

34.     Acrisure discovered that before her resignation from Acrisure, Howes sent at least one email containing Acrisure's confidential and trade secret information to her personal email address.  Acrisure further discovered that Howes also created a DropBox account using her Acrisure computer and uploaded Acrisure's confidential and trade secret information to that DropBox account.   The information taken by Ms. Howes includes, among other things, comprehensive lists of the Acrisure clients she managed, including client names, addresses, identification of contact person, policy numbers, and details about each policy.   Upon

information and belief, Howes created the DropBox account so that she could access the uploaded Acrisure's confidential and trade secret information once she began working for EPIC. This information would allow EPIC, among other things, to specifically tailor a policy to match the exact coverage provided by Acrisure. *See* Decl. of Andrew Reiser ¶ 4, attached hereto as Exhibit H; *see also* Ex. A, ¶ 23.

35.     Further, Howes misappropriated all of Acrisure's insurance carriers' system credentials. *See* Ex. A, ¶ 24, Ex. H, ¶ 5. These credentials are unique to Acrisure, and they provide information on current and future policies and terms. *Id*. It is clear Howes misappropriated these credentials in order to improperly access Acrisure's current policies and future renewals of these policies. *Id*.

36.     The timing of Howes' downloading makes clear that Howes had no legitimate business reason to access Acrisure's confidential information and trade secrets and sending them to her personal email or otherwise misappropriating them. *See* Ex. A, ¶ 25.

37.     Upon information and belief, prior to his resignation from Acrisure, Defendant Palmer solicited Howes to leave Acrisure and accept employment with EPIC, in violation of the non-solicitation clause of his Employment Agreement and in an effort to debilitate Acrisure's operations. *See* Ex. A, ¶ 26. Upon information and belief, Palmer also attempted to solicit at least one other Acrisure employee to accept employment with EPIC. *Id*.

38.     Upon information and belief, in violation of their Employment Agreements, Defendants Howes and Palmer have sent emails to at least some of their Acrisure clients and other business contacts after they resigned from Acrisure, informing these clients and contacts that they now work for EPIC. Attached hereto as Exhibit I is a true and correct copy of a February 19, 2019 email message from Howes to Jordan Slencak at Signal Administration, Inc.,

an agent for Signal Mutual Indemnity Association Ltd. ("Signal"). In turn, Slencak sent the email to one of Acrisure's clients. Ms. Howes managed Signal's account as part of her responsibilities at Acrisure. Attached hereto as Exhibit J is a true and correct copy of other email messages from Howes and Palmer to Acrisure clients.

39.     Upon information and belief, Palmer met in person with at least one of his Acrisure clients very soon before resigning from Acrisure, presumably to discuss his move to EPIC. Attached hereto as Exhibit K is a true and correct copy of a February 15, 2019 email message from Palmer to Rod Rodriguez, Jr., Roland Rodriguez, and Young Kim at Summit Steel, requesting a meeting the following Monday morning "to discuss something important." The day of the meeting, February 18, 2019, was the day before Palmer and Howes resigned from Acrisure. *Id*.; *see also* Ex. A, ¶ 28.

### D.  Irreparable Harm to Acrisure

40.     At the time of their resignation from Acrisure, Howes and Palmer had responsibility for a book of Acrisure business totaling up to $1,100,000. *See* Ex. A, ¶ 29. Howes was also the account manager for additional accounts not produces by Palmer, including one account worth approximately $185,000 by itself. *Id*. Nearly $400,000 of that business relates to policies that will renew during the next two months. *Id*. Upon information and belief, if left unrestrained, Howes, Palmer, and EPIC plan to use Acrisure's confidential and trade secret information to try and convince those clients to switch their business to EPIC when those policies renew, among other things. *Id*.

41.     Acrisure will suffer irreparable harm if Howes' and Palmer's misappropriation of Acrisure's confidential information and trade secrets and the violations of their confidentiality obligations to Acrisure are not immediately enjoined. *Id*.

### E.  **Right to Equitable Relief**

42.     Acrisure is likely to succeed on the merits of its claims because (1) Howes and Palmer have misappropriated Acrisure's valuable Confidential Information and Trade Secrets; and (2) Howes and Palmer have breached the valid and enforceable agreement to maintain as confidential Acrisure's Confidential Information and Trade Secrets and return company property upon termination of their employment.

43.     Breach of the confidentiality obligations may allow EPIC or another entity or person to compete unfairly with Acrisure resulting in "substantial and irreparable injury" to Acrisure.  *See* Exs. B, C (Employment Agreements, ¶ 11).

44.     Accordingly, Palmer and Howes agreed that upon a breach (or threat of a breach), "[Acrisure] is entitled, in addition to any other remedies, to preliminary and permanent injunctive relief to secure specific performance and to prevent a breach or contemplated breach of [the] Agreement." *Id.*

45.     Acrisure's business opportunities, competitive advantage, Confidential Information and Trade Secrets, and potential relations with its employees, clients and other business associates will be irreparably harmed if a TRO, including PI relief, is not entered.

46.     Acrisure will suffer far greater harm if a TRO and PI are not granted than Palmer, Howes, and EPIC will suffer if a TRO and PI are granted.  By contrast, Defendants will suffer minimal harm and will simply be required to honor their obligations to Acrisure.

47.     Granting a TRO and PI serves the public interest.

**CAUSES OF ACTION**

**COUNT I**
**MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE**
**DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836**
**(AGAINST HOWES AND PALMER)**

48.     All preceding paragraphs are incorporated herein as if fully set forth.

49.     During Howes' and Palmer's employment with Acrisure, they had access to and currently are in possession of certain confidential and proprietary information constituting "trade secrets" as defined by the Defend Trade Secrets Act, 18 U.S.C. § 1836, including, but not limited to, Acrisure's confidential client lists, pricing information, underwriter relationships, account pricing, renewal dates and specific coverages, which are unique to each client.  This information is a protectable interest belonging to Acrisure.

50.     This information is sufficiently secret to derive economic value from not being generally known to other persons or entities who can obtain economic value from its disclosure or use, including, but not limited to, EPIC.

51.     This information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

52.     Defendants' current possession of and threatened use of Acrisure's trade secret information is being done without Acrisure's authorization or permission.

53.     The Acrisure trade secrets misappropriated by Defendants are related to a product or service used in, or intended for use in, interstate or foreign commerce.

54.     Defendants' unauthorized possession, use, and/or disclosure of Acrisure's trade secret information, actual and threatened, violates the Defend Trade Secrets Act, 18 U.S.C. § 1836.

55.     The public policy in favor of the protection of Acrisure's interest in maintaining its trade secrets outweighs any interest Defendants allegedly may have in using Acrisure's trade secrets.

56.     As a result of the above, Acrisure has no adequate remedy at law and has suffered and will continue to suffer an imminent risk of further irreparable harm.  Therefore, Acrisure requests that Defendants' activities be enjoined by the Court; that Defendants be required to cease any and all disclosure or use of Acrisure's confidential information; that Defendants be required to return Acrisure's documents and information; that Howes and Palmer be required to provide a complete accounting of all of Acrisure's documents and information (both hard and electronic copies) that Howes and Palmer removed or obtained from Acrisure; and that EPIC be required to provide a complete accounting of all of Acrisure's documents and information (both hard and electronic copies) that it obtained from Howes and Palmer.

57.     As a direct and proximate result of Defendants' actual and/or threatened misappropriation of Acrisure's trade secrets, Acrisure has suffered and continues to suffer immediate and irreparable injury, loss, harm or damage, and will continue to suffer said injury, loss, harm, or damage, unless and until Defendants are restrained from their present conduct.

58.     As a direct and proximate result of Defendants' actual and/or threatened misappropriation of Acrisure's trade secrets, Acrisure has suffered and/or will suffer additional damages, which continue to accrue, including, without limitation, attorney's fees and costs related to this litigation and lost business and profits.

**COUNT II**
**MISAPPROPRIATION OF TRADE SECRETES IN VIOLATION**
**OF THE MICHIGAN UNIFORM TRADE SECRETS ACT[1]**
**(AGAINST HOWES AND PALMER)**

59.     All preceding paragraphs are incorporated herein as if fully set forth.

---

[1]  The Employment Agreements of both Palmer and Howes call for the application of Michigan law.  *See* Ex. B, ¶ 18; Ex C, ¶ 17.  Acrisure has made allegations under both Texas and Michigan Uniform Trade Secrets Acts, should it be determined that Texas law applies to Howes' and Palmer's misappropriation of trade secrets.

60. During Howes' and Palmer's employment with Acrisure, they had access to and currently are in possession of certain confidential and proprietary information constituting "trade secrets" as defined by the Michigan Uniform Trade Secrets Act § 445.1901, et seq., including, but not limited to, Acrisure's confidential client lists, pricing information, underwriter relationships, account pricing, renewal dates and specific coverages, which are unique to each client. This information is a protectable interest belonging to Acrisure.

61. This information is sufficiently secret to derive economic value from not being generally known to other persons or entities who can obtain economic value from its disclosure or use, including, but not limited to, EPIC.

62. This information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

63. Defendants' current possession of and threatened use of Acrisure's trade secret information is being done without Acrisure's authorization or permission.

64. The Acrisure trade secrets misappropriated by Defendants are related to a product or service used in, or intended for use in, interstate or foreign commerce.

65. Defendants' unauthorized possession, use, and/or disclosure of Acrisure's trade secret information, actual and threatened, violates the Michigan Uniform Trade Secrets Act § 445.1901, et seq.

66. The public policy in favor of the protection of Acrisure's interest in maintaining its trade secrets outweighs any interest Defendants allegedly may have in using Acrisure's trade secrets.

67. As a result of the above, Acrisure has no adequate remedy at law and has suffered and will continue to suffer an imminent risk of further irreparable harm. Therefore, Acrisure

requests that Defendants' activities be enjoined by the Court; that Defendants be required to

cease any and all disclosure or use of Acrisure's confidential information; that Defendants be

required to return Acrisure's documents and information; that Howes and Palmer be required to

provide a complete accounting of all of Acrisure's documents and information (both hard and

electronic copies) that Howes and Palmer removed or obtained from Acrisure; and that EPIC be

required to provide a complete accounting of all of Acrisure's documents and information (both

hard and electronic copies) that it obtained from Howes and Palmer.

68.     As a direct and proximate result of Defendants' actual and/or threatened

misappropriation of Acrisure's trade secrets, Acrisure has suffered and continues to suffer

immediate and irreparable injury, loss, harm or damage, and will continue to suffer said injury,

loss, harm, or damage, unless and until Defendants are restrained from their present conduct.

69.     As a direct and proximate result of Defendants' actual and/or threatened

misappropriation of Acrisure's trade secrets, Acrisure has suffered and/or will suffer additional

damages, which continue to accrue, including, without limitation, attorney's fees and costs

related to this litigation and lost business and profits.

### COUNT III
#### MISAPPROPRIATION OF TRADE SECRETES IN VIOLATION OF THE TEXAS UNIFORM TRADE SECRETS ACT[2] (AGAINST HOWES AND PALMER)

70.     All preceding paragraphs are incorporated herein as if fully set forth.

71.     Acrisure's confidential client lists, pricing information, underwriter relationships,

account pricing, renewal dates and specific coverages, which are unique to each client, constitute

---

[2] The Employment Agreements of both Palmer and Howes call for the application of Michigan law.  *See* Ex. B, ¶ 18; Ex C, ¶ 17.  Acrisure has made allegations under both Texas and Michigan Uniform Trade Secrets Acts, should it be determined that Texas law applies to Howes' and Palmer's misappropriation of trade secrets.

trade secrets within the meaning of Texas Uniform Trade Secrets Act ("TUTSA"). These confidential information and trade secrets are undoubtedly valuable to Acrisure and would be valuable to any competitor of Acrisure, including EPIC. The information has been compiled based on business relationships between Acrisure and its clients and business partners that have taken years to establish and maintain. Acrisure's confidential information is not easily acquired or duplicated and is at all times protected by Acrisure's secure computer system that only permits access through unique usernames and passwords. Additionally, Acrisure's confidential information is only accessible to certain Acrisure's employees, including Palmer and Howes, who have received instruction under Acrisure's company policies to preserve the secrecy of such information and protect such information from disclosure.

72. Notably, Acrisure's confidential information and trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable by, other persons who could obtain an economic advantage from its disclosure or use.

73. By downloading Acrisure's confidential information and trade secrets for an improper purpose and retaining it without Acrisure's consent, Palmer and Howes misappropriated Acrisure's trade secrets within the meaning of the TUTSA. Upon information and belief, Palmer and Howes thereafter did use and plan to further use Acrisure's confidential information and trade secrets for an improper means, namely to solicit, service or sell to certain Acrisure customers for their own benefit and the benefit of their new employer, EPIC.

74. Such conduct is a further misappropriation under the TUTSA. The timing of Palmer and Howes' conduct demonstrates that the conduct was willful and malicious.

75.     The public policy in favor of the protection of Acrisure's interest in maintaining its trade secrets outweighs any interest Defendants allegedly may have in using Acrisure's trade secrets.

76.     As a result of the above, Acrisure has no adequate remedy at law and has suffered and will continue to suffer an imminent risk of further irreparable harm.  Therefore, Acrisure requests that Defendants' activities be enjoined by the Court; that Defendants be required to cease any and all disclosure or use of Acrisure's information; that Defendants be required to return Acrisure's documents and information; that Palmer and Howes be required to provide a complete accounting of all Acrisure's documents and information (both hard and electronic copies) that Palmer and Howes removed or obtained from Acrisure; and that EPIC be required to provide a complete accounting of all of Acrisure's documents and information (both hard and electronic copies) that it obtained from Palmer and Howes.

77.     As a direct and proximate result of Defendants' actual and/or threatened misappropriation of Acrisure's trade secrets, Acrisure has suffered and continues to suffer immediate and irreparable injury, loss, harm or damage, and will continue to suffer said injury, loss, harm, or damage, unless and until Defendants are restrained from their present conduct.

78.     As a direct and proximate result of Defendants' actual and/or threatened misappropriation of Acrisure's trade secrets, Acrisure has suffered and/or will suffer additional damages, which continue to accrue, including, without limitation, attorney's fees and costs related to this litigation and lost business and profits.

**COUNT IV**
**BREACH OF CONTRACT**
**(AGAINST HOWES AND PALMER)**

79.     All preceding paragraphs are incorporated herein as if fully set forth.

80.     Palmer and Howes each certified and agreed to comply with their respective Employment Agreements.  Exs. B, C.

81.     As part of their Agreements, the Howes and Palmer agreed that they would not directly or indirectly, disclose, furnish, or make available any Acrisure Confidential Information without Acrisure's prior written consent.  They further agreed that these restrictions concerning Confidential Information would remain in effect following termination of their Agreements or termination of their employment with Acrisure, without limitation.  *Id.* ¶ 8.

82.     In addition, Palmer and Howes agreed that for the duration of their employment, and in the event their employment is terminated for any reason, for a period of two (2) years after the termination of employment, they he would not: (1) directly or indirectly contact or engage in any communication with any Acrisure customer to secure business competitive to the products and services provided by Acrisure; (2) request, advise or encourage any customer of Acrisure to terminate or curtail its relationship with Acrisure; and (3) request, advise or encourage any employee, agent, representative or independent contractor of Acrisure to terminate his, her, or its relationship with Acrisure.  *Id.* ¶ 10.

83.     Acrisure employed Palmer and Howes and continued their employment based, in part, on their agreements to comply with their respective Employment Agreements.

84.     Acrisure provided Palmer and Howes access to its confidential information and trade secrets in partial consideration for their agreements to maintain the confidentiality of such information.  *Id.*

85.     Palmer and Howes breached their Agreements with Acrisure by taking, without Acrisure's consent, Acrisure's trade secrets and other confidential and proprietary information.

86.     Palmer further breached his agreement with Acrisure by soliciting Howes to terminate her employment with Acrisure and accept employment with EPIC.

87.     In addition, Howes breached her agreement by contacting Acrisure's clients after the termination of her employment with Acrisure in order to solicit business from these clients.

88.     Palmer and Howes have also anticipatorily breached their agreements with Acrisure in that they reasonably knew that their employment by EPIC will cause them inevitably to disclose for the mutual benefit of themselves and EPIC the trade secrets and other confidential information of Acrisure.

89.     As a result of Palmer's and Howes' material breaches of their Employment Agreements, Acrisure was required to retain the services of Shook Hardy & Bacon, L.L.P. to represent it in this case.  Acrisure is entitled to recover its reasonable attorney's fees and costs pursuant to the provisions of the Employment Agreements and Chapter 38 of the Texas Civil Practice and Remedies Code and requests such fees and costs in this suit.

### COUNT V
### BREACH OF FIDUCIARY DUTIES
### (AGAINST HOWES AND PALMER)

90.     All preceding paragraphs are incorporated herein as if fully set forth.

91.     At all times relevant hereto, Palmer and Howes owed Acrisure a fiduciary duty not to take, use, or disclose its confidential and proprietary information and trade secrets during and after their employment relationship with Acrisure.  Exs. B, C.

92.     Defendants Palmer and Howes breached that duty by using, disclosing, and misappropriating or threatening to misappropriate Acrisure's data and confidential and proprietary information and trade secrets for their own benefit and not the benefit of Acrisure.

93.     As a direct and proximate result of their breaches of fiduciary duty, Acrisure has been damaged, and Defendants have gained and benefited and will continue to gain and benefit as a result.

## COUNT VI
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP
### (AGAINST EPIC)

94.     All preceding paragraphs are incorporated herein as if fully set forth.

95.     EPIC willfully, intentionally, and maliciously induced Palmer and Howes to breach their fiduciary duties and duties of loyalty to Acrisure or participated in the breaches of fiduciary duties to Acrisure.

96.     EPIC had actual knowledge that Defendants Palmer and Howes had entered into Employment Agreements and of the prohibitions imposed upon Howes and Palmer therein, including the obligations to not solicit, encourage, or advise any employee of Acrisure to terminate his or her employment with Acrisure; to not solicit, encourage, or advise any of Acrisure's clients to terminate or curtail its relationship with Acrisure; to not contact or engage in any type of communication with any of Acrisure's clients to secure business competitive to the product and services provided by Acrisure; and to not misappropriate and disclose Acrisure's confidential information and trade secrets.

97.     Despite such knowledge, EPIC willfully and intentionally encouraged Palmer and Howes to breach their duties of loyalty and Employment Agreements with Acrisure, solicited and hired Palmer, induced Palmer to solicit Howes and other Acrisure employees, in direct violation of the Employment Agreements.

98.     EPIC is therefore liable for Howes' and Palmer' breaches of duties to Acrisure.

99.     As a direct and proximate result of Howes' and Palmer's breaches of duties while acting as agents for EPIC, EPIC has been unjustly enriched, and gained and benefited, and will continue to gain and benefit, as a result thereof.

100.    EPIC tortiously interfered with the business relationship between Acrisure and its employees.   Said interference with the employment relationships between Acrisure and its former employees, has proximately caused damage to Acrisure.

## COUNT VII
### UNJUST ENRICHMENT
### (AGAINST ALL DEFENDANTS)

101.    All preceding paragraphs are incorporated herein as if fully set forth.

102.    The Defendants' breaches of duties are for the mutual benefit of the Defendants and have unjustly enriched Defendants.

103.    Defendants have wrongly obtained access to Acrisure's confidential and proprietary information and trade secrets through the wrongful and improper conduct of illegally downloading Acrisure's data, targeting and soliciting Acrisure's clients, and the targeting and recruiting of Acrisure's key employees.

104.    As a result of their conduct, Defendants have been unjustly enriched at the expense of Acrisure.

105.    As a direct and proximate result of Defendants' unjust enrichment, Acrisure has suffered and continues to suffer damages.

## COUNT VIII
### CONSPIRACY
### (AGAINST ALL DEFENDANTS)

106.    All preceding paragraphs are incorporated herein as if fully set forth.

107.    EPIC, Palmer and Howes became members of a combination.

108.    The purpose of this combination was to accomplish an unlawful purpose and/or a lawful purpose by unlawful means.

109.    The Defendants conspired by concerted action to breach fiduciary duties owed to Acrisure, to misappropriate Acrisure's confidential and proprietary information and trade secrets, to tortiously interfere with Acrisure's employment relations, and to engage in unfair competition against Acrisure.

110.    The Defendants had a meeting of the minds on this object or course of action and committed one or more overt acts to further the object or course of action.  These overt acts include, but are not limited to: (a) using Acrisure's trade secrets and other confidential and proprietary information for their own purposes and not for the benefit of Acrisure; (b) using Acrisure's confidential and proprietary information to solicit its employees; (c) soliciting Acrisure's employees on behalf of EPIC while the employees remained employed by Acrisure; (d) communicating and soliciting Acrisure's clients to secure business competitive to the products and services provided by Acrisure; and (e) taking, without Acrisure's consent, Acrisure's confidential and proprietary information and trade secrets.

111.    The Defendants are jointly and severally liable for the acts done in furtherance of the conspiracy.

112.    As a direct and proximate result of the wrongful acts in furtherance of the conspiracy, Acrisure has suffered damages.

### EXEMPLARY DAMAGES
### (ALL DEFENDANTS)

113.    All preceding paragraphs are incorporated herein as if fully set forth.

114.    The wrongful conduct of the Defendants described above was and is intentional, willful, malicious, and in conscious disregard of Acrisure's rights.

115.    To deter Defendants' wrongful conduct and to deter others from engaging in similar wrongdoing, Defendants should be assessed exemplary damages.

### CONDITIONS PRECEDENT

116.    All conditions precedent to Acrisure's claims have been satisfied.

### DAMAGES

117.    In addition to the emergency relief and injunctive relief contained herein, Acrisure has suffered damages in an amount that exceeds the jurisdictional limits of this court.

### LEGAL FEES

118.    Acrisure requests its attorneys' fees and expenses pursuant to the Employment Agreements and applicable Texas law and under TEX. CIV. PRAC. & REM. CODE § 38.001, TEX. CIV. PRAC. & REM. CODE §§ 143.001-143.002, and as allowed under applicable federal law.

### JURY DEMAND

119.    Acrisure requests trial by jury.

### RELIEF REQUESTED

WHEREFORE, Plaintiff Acrisure respectfully requests the Court order the following:

120.    Palmer, Howes, EPIC, their respective agents and all other persons and entities in active concert, participation, or privity with them, are prohibited from retaining possession of, directly or indirectly using, disclosing or transmitting for any purpose, Acrisure's confidential, proprietary, and/or trade secret information or documents, files, or data belonging to Acrisure, including, but not limited to the specific Acrisure documents emailed by Howes to her personal email address and/or to Palmer, as described in the Declarations of Camille Reiser and Andrew Reiser, filed with Acrisure's Verified Application for Temporary Restraining Order, Preliminary Injunction and Complaint.

121.    Palmer and Howes are ordered to suspend their active employment and the provision of any services for EPIC; EPIC may, however, continue to pay Palmer and Howes.

122.    Defendants are ordered to conduct an immediate and thorough search for any Acrisure property and confidential data Defendants may have under their respective possession, custody, or control, whether in paper or electronic form.  Defendants are ordered to preserve, and not to destroy, any Acrisure documents or any copies of such documents.  If Defendants have multiple copies of particular documents, all originals and copies of such documents must be returned to Acrisure.  Defendants are prohibited from destroying, discarding, or erasing any electronic storage devices where such documents have been stored.

123.    Defendants are ordered to preserve any and all documents, whether in paper or electronic form, that relate in any way to the claims alleged in Acrisure's Complaint or the subject matter of this action.  Defendants are ordered on notice that any destruction of evidence, including deletion or alternation of e-mails, text messages, voice messages, files, back-up drives, or any other data or documents, whether in electronic or paper form, will constitute spoliation of evidence and will subject Defendants, and/or each of them, to sanctions.

124.    Defendants shall return to Acrisure all documents, materials and information constituting, containing, summarizing or extracting Acrisure's confidential, proprietary, and/or trade secret information or documents, files or data belonging to Acrisure, including, without limitation, the information described in Paragraph 118 of this Application and Complaint. Palmer and Howes must turn over all computers, cell phone(s), smart phone(s), USBs or other external storage devices, and any other electronic devices each of them has used since July 2011 and February 2013, respectively, or which are in their respective possession, custody, or control within 48 hours from receiving notice of the Court's Order to a third-party computer forensics

vendor designated by Acrisure for forensic imaging and inspection.  Acrisure shall pay for the third-party vendor's forensic imaging and inspection, but Acrisure shall be entitled to reimbursement for all such costs if the forensic examination uncovers the existence of any Acrisure confidential, proprietary, and/or trade secret information contained on such electronic devices.

125.    Palmer and Howes are prohibited from contacting or engaging in any communication with any Acrisure or customer or client, or contacting or engaging in any communications with any Acrisure or affiliated companies' customer or client about whom Defendant obtained knowledge during employment with Acrisure, to secure business competitive to the products and services provided by Acrisure for a period of two (2) years after Defendants' employment with Acrisure ended.

126.    Palmer and Howes are prohibited from requesting, advising, or encouraging any customer of Acrisure to terminate or curtail its relationship with Acrisure, or requesting or advising any person to refrain from becoming a customer or supplier of Acrisure for a period of two (2) years after Defendants' employment with Acrisure ended.

127.    Defendants each shall file with this Court and serve on Acrisure's counsel, within seven (7) days after service of the Court's Order, a written report, signed under oath, setting forth in detail the manner and form in which each of them has complied with Paragraphs 1 through 5 of the Court's Order.

128.    Acrisure may serve the Court's Order upon any other entity or person that may have possession, custody, control, or knowledge of any relevant documents or information, by delivering a copy of this Order by any means, including by electronic mail.

129.    The Temporary Restraining Order shall remain in full force and effect until such other time as the Court specifically orders.

130.    Pursuant to Federal Rule of Civil Procedure 65(b), Defendants shall appear before this Court at a date, time, and location to be determined, for a hearing on Acrisure's Motion for Preliminary Injunction.

131.    Defendants shall serve all memoranda, declarations, and other papers and evidence on which they intend to rely not later than 4:00 p.m. of the fifth business day before the preliminary injunction hearing set in this matter.  Service on Acrisure shall be performed by ECF, and/or by email delivery to Acrisure's counsel of record at the email addresses appearing in their signature block.  Acrisure may serve and file a supplemental memorandum of law based on evidence discovered after the filing of its complaint by no later than 4:00 p.m. of the fifth business day before the preliminary injunction hearing and may serve and file a reply to the Defendants' opposition(s) by no later than noon on the second business day before the preliminary injunction hearing.

132.    This Court shall retain jurisdiction of this matter for all purposes.

133.    The Court has assessed the facts and circumstances and determines that no security bond is required.

134.    Any other relief that the Court finds just and equitable.

Dated February 25, 2019                     Respectfully submitted,


                                            SHOOK, HARDY & BACON


                                            By:  _/s/ Tanya L. Chaney_____
                                                 Tanya L. Chaney, Attorney-in-charge
                                                 SDTX ID No.:   33555
                                                 Texas Bar No.:  24036375
                                                 Sonila Themeli
                                                 SDTX ID No. 2828237
                                                 Texas Bar No. 24073588
                                                 JPMorgan Chase Tower
                                                 600 Travis St., Suite 3400
                                                 Houston, TX  77002
                                                 Telephone:    (713) 227-8008
                                                 Facsimile:    (713) 227-9508
                                                 E-mail:       tchaney@shb.com
                                                               sthemeli@shb.com

                                            *Attorneys for Acrisure, LLC*